# EXHIBIT 2

## **DECLARATION OF PETER MCDONOUGH**

I, Peter McDonough, declare as follows:

1. I am Vice President and General Counsel for the American Council on Education ("ACE"), having joined ACE in January 2015. I make this declaration in support of the Plaintiffs' Complaint in this matter and the forthcoming Emergency Motion for a Temporary Restraining Order.

2. I have personal knowledge of the contents of this declaration or have knowledge of the matters based on my review of information and records gathered by ACE personnel and personnel from our member universities, and could testify thereto.

3. Founded in 1918, ACE is a membership organization composed of more than 1,600 colleges and universities, related associations, and other organizations in America and abroad. ACE is the only major higher education association to represent all types of U.S. accredited, degree-granting colleges and universities. Its members educate two out of every three students in all accredited, degree-granting U.S. institutions.

4. ACE's mission includes collaborating across the higher education sector to design solutions for today's challenges and shape effective public policy. A core reason for the organization's existence is to advocate for public policies that support its members' interests, including their interests in obtaining support for academic research.

5. ACE has members in all 50 states and the District of Columbia.

6. ACE member universities include Case Western Reserve University, Cornell University, Princeton University, SUNY Stony Brook University, Tufts University, University of Florida, and University of Wisconsin-Madison. I understand that these ACE members and several

others are submitting declarations in this litigation, which provide institution-specific detail on the matters described below.

7.  The federal government has selected ACE member universities to conduct a wide variety of vital research on behalf of United States citizens, funded in part by agency awards from across the federal government, including but not limited to the Department of Health and Human Services ("HHS") and its National Institutes of Health ("NIH"). ACE member universities' work on sponsored awards issued by NIH studies important health issues, saves and improves lives, and adds immeasurably to our national welfare and our economy.

8.  On February 7, 2025, NIH issued Notice NOT-OD-25-068, "Supplemental Guidance to the 2024 NIH Grants Policy Statement: Indirect Cost Rates" ("NIH Supplemental Guidance"). The NIH Supplemental Guidance provides that effective February 10, 2025, indirect costs allowed on all future awards and going-forward expenses for all existing awards shall be limited to fifteen percent.

9.  If NIH's Supplemental Guidance is permitted to remain in effect, it will irreparably harm research at ACE member universities that directly benefits public health and American competitiveness. Such a drastic decrease in allowable indirect costs will immediately impair the ACE member universities' ability to conduct sponsored research in compliance with the underlying award agreements and applicable laws, and it will create cascading and longer-term harms as well.

10. The declarations submitted by ACE members in this litigation vividly illustrate the types of harms felt by all ACE members with NIH grant funding.

11. Moreover, the harmful impact of the NIH Supplemental Guidance is not limited to ACE member universities. Many ACE member universities are the largest employers in their local

areas. Where the lower indirect cost reimbursement rate requires layoffs, that loss of employment will be harmful not only to the affected employees and their families, but to the overall economic stability of the ACE member universities' hometowns as a whole.

12.     In addition, the NIH Supplemental Guidance will undermine the feasibility of sponsored activity that results in medical and scientific breakthroughs that provide significant social and economic value to the country, sometimes opening up entirely new areas of commercial development.

13.     Temporary injunctive relief is critical to protect against these devastating consequences.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 10, 2025         _____
       Washington, DC