# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ASSOCIATION OF AMERICAN UNIVERSITIES, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>Defendants. | ) | Case No. 1:25-cv-10346 |

**DECLARATION OF LINDSAY C. HARRISON**

I, Lindsay C. Harrison, declare as follows.

1. I am a Partner at Jenner & Block LLP ("Jenner & Block" or the "Firm") and Managing Partner of the Firm's Washington, D.C. office.

2. I have personal knowledge of the contents of this declaration or have knowledge of the matters based on my review of information and records gathered by Jenner & Block personnel and could testify thereto. I led the team of Jenner attorneys that litigated this challenge to the National Institutes of Health ("NIH") policy imposing a 15% cap on indirect cost rates for institutions of higher education ("IHEs") that receive NIH grant funding. *See* NIH, NOT-OD-25-068, *Supplemental Guidance to the 2024 NIH Grants Policy Statement: Indirect Cost Rates* (Feb. 7, 2025), https://grants.nih.gov/grants/guide/notice-files/NOT-OD-25-068.html ("NIH Supplemental Guidance").

3. NIH first announced its plan for the rate cap in the Supplemental Guidance issued on Friday evening, February 7, 2025. The Supplemental Guidance stated that NIH was "imposing

a standard indirect cost rate on all grants of 15% . . . ." NIH Supplemental Guidance. The rate cap would have applied to "any new grant issued" and to "all existing grants to IHEs retroactive to the date of issuance of this Supplemental Guidance," regardless of the existing rate. *Id.*

4. The NIH Rate Cap Policy demanded immediate legal action. As detailed in the 37 declarations we filed, the Policy would have caused irreparable harm to Plaintiffs and their members. *See* (Doc Nos. 2-1–31, 81-1–6). The Policy was set to go into effect on the following business day, Monday, February 10, 2025, after it was issued, meaning time was of the essence. Filing suit as quickly as possible, before the Policy could be implemented against Plaintiffs and their members, was critical to prevent irreparable harm. The attorneys listed in this fee motion worked tirelessly over the weekend following the issuance of the Supplemental Guidance to finalize and file a complaint, motion for a temporary restraining order, and 31 declarations on Monday, February 10, 2025. *See* (Doc Nos. 1, 2, 2-1–31).

5. This herculean task would not have been possible had several attorneys on the team not had significant experience and expertise in higher education law. Before filing this suit, Chambers had ranked Jenner & Block's Education Practice as Band 1. *Higher Education / USA*, Chambers and Partners (last visited May 1, 2026), https://chambers.com/legal-rankings/higher-education-usa-nationwide-5:3596:12788:1?l=en-GB. Ishan Bhabha, Lauren Hartz, Betsy Henthorne, Adam Unikowsky, and I are partners in Jenner's Education Practice. Chambers has also individually ranked Ishan Bhabha and Lauren Hartz as Band 1 and Band 3, respectively, for their expertise in higher education law. *Id.* Our deep experience and expertise were essential to drafting and filing a lawsuit, moving for a temporary restraining order, and coordinating the preparation and filing of 31 fact declarations as quickly as we did—on the next business day after NIH issued the Supplemental Guidance. Because our expertise was necessary to litigate this

challenge on an expedited timeline, we are requesting an enhanced rate of $500 per hour—which is still well below the hourly rate charged to AAU in this matter—for the above-listed partners who are members of the Education Practice.

6. During the course of litigating this case, attorneys at Jenner & Block also developed distinctive knowledge and specialized skills challenging other rate cap policies. I—along with Ishan Bhabha, Betsy Henthorne, Zachary Schauf, and Adam Unikowsky—litigated similar suits against rate caps issued by the Department of Energy ("DOE"), National Science Foundation ("NSF"), and Department of Defense ("DOD"). *See AAU v. DOE*, No. 1:25-cv-10912 (D. Mass.); *AAU v. NSF*, No. 1:25-cv-11231 (D. Mass.); *AAU v. DOD*, 1:25-cv-11740 (D. Mass.). By the time we filed our response brief in the First Circuit in this suit, we had won a preliminary injunction against the DOE rate cap policy and moved for a preliminary injunction and summary judgment against the NSF rate cap policy. *See AAU v. DOE,* 789 F. Supp. 3d 118, 153 (D. Mass. 2025); Motion for a Preliminary Injunction and Summary Judgment, *AAU v. NSF*, No. 1:25-cv-11231 (D. Mass. May 8, 2025), ECF No. 40. And by the time the First Circuit heard oral argument in this case, we had won permanent relief against the DOE, NSF, and DOD rate cap policies, and NSF had voluntarily dismissed its own appeal. *See* Final Judgment, *AAU v. DOE*, No. 1:25-cv-10912 (D. Mass. June 30, 2025), ECF No. 71; *AAU v. NSF*, 788 F. Supp. 3d 106, 138–44 (D. Mass. 2025); *AAU v. DOD*, 806 F. Supp. 3d 79, 120–24 (D. Mass. 2025); Judgment, *AAU v. NSF*, No. 25-1794 (1st Cir. Sept. 30, 2025).

7. In the course of litigating these other suits, we developed distinctive knowledge and specialized skills regarding the statutory and regulatory frameworks governing indirect costs across federal agencies, as well as the factual and legal bases for challenging policies limiting such costs. Our distinctive knowledge and specialized skills in this very specific area of both facts and

law were essential to securing our victory in the First Circuit. Because our distinctive knowledge and specialized skills were necessary to litigate this appeal on the government's requested expedited timeline, we are requesting an enhanced rate of $500 per hour—which is still well below the hourly rate charged to AAU in this matter—for those attorneys that worked on the appeal in this case as well as challenges to other agencies' rate cap polices.

8. The attorneys with expertise in higher education law, distinctive knowledge and specialized skills from litigating other challenges to rate cap policies, or both, for whom we are requesting a rate of $500, are:

a. **Lindsay Harrison.** As noted, I am a Partner at Jenner & Block and the Managing Partner of Jenner's Washington, DC office. I graduated from Harvard Law School in 2003 and clerked for Judge Rosemary Barkett on the U.S. Court of Appeals for the Eleventh Circuit and Judge Alan S. Gold on the U.S. District Court for the Southern District of Florida. I have been an attorney at Jenner & Block for 19 years. I am a member of Jenner's Chambers Band 1 Education Practice, and I led the litigation teams in challenging the DOE, NSF, and DOD rate cap policies.

b. **Ishan Bhabha.** Ishan Bhabha is Co-Managing Partner of Jenner & Block. He graduated from Harvard Law School in 2009 and clerked for Justice Anthony Kennedy on the Supreme Court of the United States and for Judge Merrick B. Garland on the U.S. Court of Appeals for the D.C. Circuit. He has been an attorney at Jenner & Block for 14 years. Mr. Bhabha is Co-Chair of Jenner's Chambers Band 1 Education Practice and is individually ranked Band 1 by Chambers for higher education. He worked on the challenges to the DOE, NSF, and DOD rate cap policies.

c. **Lauren Hartz.** Lauren Hartz is a Partner at Jenner & Block in its Washington, DC office. She graduated from Yale Law School in 2014 and clerked for Judge William J. Kayatta, Jr. on the U.S. Court of Appeals for the First Circuit and Judge Allyne R. Ross on the U.S. District Court for the Eastern District of New York. She has been an attorney at Jenner & Block for over 8 years. Ms. Hartz is Co-Chair of Jenner's Band 1 Education Practice and has been individually ranked Band 3 by Chambers for higher education.

d. **Betsy (Elizabeth) Henthorne.** Betsy Henthorne is a Partner at Jenner & Block in its Washington, DC office. She graduated from Georgetown University Law Center in 2014 and clerked for Justice Elena Kagan on the Supreme Court of the United States, Judge Sri Srinivasan on the U.S. Court of Appeals for the D.C. Circuit, and Judge Gregory H. Woods on the U.S. District Court for the Southern District of New York. Before joining Jenner & Block, Ms. Henthorne was Chief of Staff and Deputy Associate Attorney General at the Department of Justice. Ms. Henthorne is a member of Jenner's Band 1 Education Practice and worked on the challenges to the DOE, NSF, and DOD rate cap policies.

e. **Zachary Schauf.** Zachary Schauf is a Partner at Jenner & Block in its Washington, DC office. He graduated from Harvard Law School in 2011 and clerked for Justice Elena Kagan on the Supreme Court of the United States and Judge Merrick B. Garland on the U.S. Court of Appeals for the D.C. Circuit. Before rejoining Jenner & Block, Mr. Schauf was a Deputy Assistant Attorney General at the Office of Legal Counsel at the Department of Justice. Mr. Schauf worked on the challenges to the DOE, NSF, and DOD rate cap policies.

f. **Adam Unikowsky.** Adam Unikowsky is a Partner at Jenner & Block in its Washington, DC office. He graduated from Harvard Law School in 2007 and clerked for Justice Antonin Scalia on the Supreme Court of the United States and Judge Douglas H. Ginsburg on the U.S. Court of Appeals for the D.C. Circuit. Mr. Unikowsky has been an attorney at Jenner & Block for 15 years. Mr. Unikowsky is a member of Jenner's Band 1 Education Practice and worked on the challenges to the DOE, NSF, and DOD rate cap policies. He presented oral argument at the preliminary injunction hearing in this matter.

9. In support of AAU's motion for attorneys' fees, I have included as Exhibit 3 a list of time and billing entries for this case, which is a true and correct accounting of time that has been billed or will be billed to AAU.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 6, 2026, in Washington, DC

*/s/ Lindsay C. Harrison*
Lindsay C. Harrison